IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JENNIFER C.,[1]

              Plaintiff,

     v.

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

              Defendant.

Case No. 6:20-cv-00311-CL

**OPINION AND ORDER**

---

**CLARKE, U.S. Magistrate Judge.**

    Jennifer C. ("Plaintiff") brings this appeal challenging the Acting Commissioner of the Social Security Administration's ("Commissioner") denial of her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction to hear Plaintiff's appeal pursuant to 42 U.S.C. § 405(g), and the parties have consented to the jurisdiction of a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court affirms the Commissioner's decision.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

PAGE 1 – OPINION AND ORDER

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or based on legal error.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

### I.    PLAINTIFF'S APPLICATION

Plaintiff filed her application for DIB on October 26, 2016, alleging disability as of December 28, 2016, due to diffuse arthritis, fibromyalgia, depression, temporomandibular joint disorder ("TMJ"), neck sticking, carpal tunnel syndrome, and restless leg syndrome. (Tr. 10,13, 220, 264.) The Commissioner denied Plaintiff's application initially and upon reconsideration. (Tr. 56-70, 72-88.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on March 13, 2019. (Tr. 28-55.) Following the administrative hearing,

PAGE 2 – OPINION AND ORDER

ALJ Rudolph Murgo issued a written decision dated April 16, 2019, denying Plaintiff's application. (Tr. 10-27.) The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6.) Plaintiff now seeks judicial review of that decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.* at 954. The Commissioner bears the burden of proof at step five of the analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954.

PAGE 3 – OPINION AND ORDER

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is

disabled. (Tr. 15-21.) At step one, the ALJ determined that Plaintiff had not engaged in

substantial gainful activity since December 28, 2016. (Tr. 15.) At step two, the ALJ determined

that Plaintiff suffered from the following severe impairments: "degenerative disc disease,

fibromyalgia, pain disorder, osteoarthritis, and dequervains tenosynovitis." (Tr. 15.) At step

three, the ALJ concluded that Plaintiff did not have an impairment that meets or equals a listed

impairment. (Tr. 16.) The ALJ then concluded that Plaintiff had the residual functional capacity

("RFC") to perform "light work as defined in 20 CFR 404.1567(b)" subject to these limitations:

> [Plaintiff] can lift and carry 25 pounds occasionally and 10 pounds frequently, can
> stand or walk 4 hours out of an 8-hour day, needs an assistive device for uneven
> terrain or long distances, can occasionally climb ropes, ladders and scaffolds,
> frequently climb ramps and stairs, stoop, kneel, crouch, and crawl, is limited to
> frequent handling and fingering bilaterally, and should avoid concentrated exposure
> to heights, hazards, and heavy equipment.

(Tr. 17.) At step four, the ALJ concluded that Plaintiff was able to perform her past relevant

work as a public affairs officer. (Tr. 20.) Accordingly, the ALJ found that Plaintiff was not

disabled under the Social Security Act and denied her application for disability benefits. (Tr. 20-

21.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred by failing to provide: (1) clear, and

convincing reasons for discounting Plaintiff's symptom testimony; (2) germane reasons for

discounting the lay witness testimony provided by Plaintiff's husband, John C.; (3) legally

sufficient reasons for discounting the opinions of examining and treating physicians, Manuel

Gomes, Ph.D. ("Dr. Gomes") and John Hayes, M.D. ("DrHayes"); and (4) adequate limitations

in the RFC assessment. (Pl.'s Opening Br. at 1.) As explained below, the Court concludes that

the Commissioner's decision is free of harmful legal error and supported by substantial evidence in the record. Accordingly, the Court affirms the Commissioner's denial of benefits.

## I.    PLAINTIFF'S SYMPTOM TESTIMONY

### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "'[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), *Lingenfelter*, 504 F.3d at 1040, and *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

/ / / / /

/ / / / /

PAGE 5 – OPINION AND ORDER

**B.     Analysis**

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 17, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record"). The ALJ was therefore required to provide specific, clear, and convincing reasons for discrediting Plaintiff's testimony. *See Ghanim*, 763 F.3d at 1163. The Court finds that the ALJ satisfied that standard here.

**1.     Daily Activities**

The ALJ discounted Plaintiff's symptom testimony based on her daily activities. (*See* Tr. 18.) An ALJ may discount a plaintiff's testimony based on activities that are incompatible with the plaintiff's testimony regarding the severity of her symptoms. *See Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014) ("Inconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination."); *Garrison*, 759 F.3d at 1016 (explaining that a claimant's activities have "bearing on [his or her] credibility" if the reported "level of activity" is "inconsistent with [the claimant's] claimed limitations"); *Ghanim*, 763 F.3d at 1165 ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination.").

Plaintiff argues that the ALJ erred in discounting her testimony based on her reported activities. (*See* Pl.'s Opening Br. at 18, arguing there is "no evidence that any work she did as an Uber driver conflicted with her symptoms reports" and that Plaintiff's "religious engagement

does not undermine her mental health complaints and this is not a clear and convincing reason to discount her testimony"). The Court disagrees.

The ALJ cites to multiple examples of Plaintiff's activities of daily living that contradict Plaintiff's subjective symptom testimony regarding the severity of her symptoms.  Specifically, the ALJ notes that Plaintiff testified to difficulties driving, but she also has done some work as an Uber driver. (Tr. 18 (citing Tr. 305).) Additionally, with respect to Plaintiff's testimony regarding the severity of her mental health impairments, the ALJ notes an inconsistency with Plaintiff's weekly work as a pastor. (Tr. 18 (citing Tr. 428, 434).)

### 2.    Contradictory Medical Evidence

The ALJ also discounted Plaintiff's symptom testimony based on contradictory medical evidence. Specifically, the ALJ asserts the Plaintiff's allegations concerning the degree of limitations she has in sitting and walking are not supported by the medical record. (*See* Tr. 390 ("The claimant does not use a cane or walker for the ambulation but she used the brace to both of wrists and thumb area. The electric scooter is not prescribed and she uses the electric scooter for the long-distance ambulation. The claimant can walk at least a short distance without any assistive device from my observation"); Tr. 390-91 ("Range of Motion: Back - Extension  20 degrees, flexion 80 degrees, and lateral flexion 20 degrees bilaterally; Hip Joints - Backward extension 30 degrees bilaterally. Flexion (knee flexed) 100 degrees, flexion (knee extended) 100 degrees bilaterally. Adduction 20 degrees bilaterally, abduction 40 degrees bilaterally; Knee Joints - Flexion 90 degrees bilaterally; Ankle Joints - Inversion 30 degrees and bilaterally. Plantar flexion 40 degrees degrees bilaterally."); Tr. 391-92 (general findings indicate "mild" tenderness); Tr. 392 ("Motor Strength/Muscle Bulk and Tone: 5/5 in the upper and lower extremities bilaterally. Grip strength is 5/5 bilaterally. Normal muscle bulk and tone. No atrophy noted."); Tr. 386 ("The vertebral body height is well maintained. There is slight anterolisthesis of

PAGE 7 – OPINION AND ORDER

L3 on L4, and L4 on L5. Multilevel diskogenic degenerative changes and facet hypertrophy is present, similar to the appearance on prior examination. The posterior elements are otherwise intact. The sacrum and sacroiliac joints are unremarkable."); Tr. 405-11 (Plaintiff reestablished care with Ryan Cooley, M.D., in July 2017 with primary complaint of osteoarthritis in the hands and low back. Minimal treatment with prescribed Cymbalta.); Tr. 412 (X-rays of the sacroiliac joints showed "no widening of the SI joints. No marginal erosions. Degenerative changes in the lumbar spine. Incidental phleboliths in the pelvis."); Tr. 413-18 (Plaintiff treated in emergency room for back spasm and was discharged with minimal treatment. Chart notes indicate: "On reevaluation, the [Plaintiff] reports that her pain has improved following treatment. The [Plaintiff] has requested that she be discharged home at this time, and given her improvement, I am comfortable proceeding with this. She will be sent with prescriptions for flexeril and naprosyn for outpatient treatment."); Tr. 420 (Plaintiff "states the x-rays all which showed mild disease in nothing severe. Had an injection into the left wrist which helped several years ago."); Tr. 440 (X-rays from February 2018 show "[m]oderate narrowing of medial compartment with moderate osteophyte in the medial femoral condyle. Mild narrowing of the lateral compartment with mild osteophyte in the lateral femoral condyle. Moderate sharpening of the tibial spines. Moderate posterior tibial plateau osteophyte, with mild osteophytes anteriorly. Moderate narrowing of the patellofemoral joint with moderate patellofemoral osteophytes superiorly and medially."); Tr. 442 (X-rays from September 2018 show "lumbar spine demonstrate normal vertebral body height. There is grade 1 anterolisthesis of L3 on L4 and L4-L5. There is moderate intervertebral disc space narrowing at L3-4 and mild intervertebral disc space narrowing at L2-3 and L4-5. There is mild multilevel endplate spurring. There is moderate to severe facet arthrosis

of the mid to lower lumbar spine. The sacroiliac joints are unremarkable."); Tr. 305 (Plaintiff

employed as Uber Driver).)

Furthermore, the ALJ acknowledges that evidence supports Plaintiff's allegations of joint

pain, but it does not support limitations beyond those incorporated into Plaintiff's RFC. (Tr. 18.)

The ALJ supports this assertion by citing to Plaintiff's minimal treatment. (*See* Tr. 424 (Plaintiff

"[w]as placed on Prozac many years ago which seemed to work well. Was switched to Effexor

which seems to help with her mood but not so much with the pain. She has tried ibuprofen and

Tylenol which she is currently using. Does not like the way tramadol makes her feel. Not sure

she wants to try anymore medications. Described a limited rheumatology work up many years

ago and was seen by Rheum and told no RA and that she has Osteoarthritis."); Tr. 428 (Plaintiff

"does not like to take pain medications. Tramadol works once a while. Has some narcotics at

home but does not like to take that either." "She does state that Effexor is working for her mood

and her pain and wreck whip [sic] is working for her restless leg syndrome. She does not use it

every day however.").)

It is appropriate for an ALJ to discount a claimant's symptom testimony based on

contradictory medical evidence. *See, e.g., Smith v. Berryhill*, 752 F. App'x 473, 475 (9th Cir.

2019) (holding that the ALJ satisfied the clear and convincing reasons standard and noting that

the ALJ appropriately discounted the claimant's testimony based on, among other reasons, the

presence of "contradictory medical evidence" in the record). Plaintiff argues the ALJ did not

provide specific, clear and convincing reasons for rejecting Plaintiff's subjective testimony

regarding her symptoms supported by objective medical imaging. (Pl.'s Opening Br. at 11.) In

the Court's view, Plaintiff's interpretation of the record is rational, but the ALJ's interpretation

of the record is also rational and, therefore, must be affirmed. Accordingly, the ALJ limited the

Plaintiff to "less than the full range of light work as defined in 20 CFR 404.1567(b)." (Tr. 17.) These limitations adequately account for the Plaintiff's medically determinable impairments. Given the evidence described above, the Court concludes that it was reasonable for the ALJ to discount Plaintiff's physical symptom testimony on the ground that it conflicted with the medical evidence.

### 3.    Conclusion

For these reasons, the Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's symptom testimony. *See Sims v. Berryhill*, 704 F. App'x 703, 704 (9th Cir. 2017) (affirming the ALJ's decision to discount the claimant's testimony because the ALJ "provided at least one clear and convincing reason supported by substantial evidence for rejecting [the claimant's] testimony as not credible"); *Johaningmeier v. Berryhill*, No. 3:16-cv-2027-AC, 2018 WL 385035, at *6 (D. Or. Jan. 11, 2018) (agreeing with the Commissioner that the ALJ did not commit harmful error in discounting the claimant's testimony because "the ALJ provided at least one other clear and convincing reason").

## II.    LAY WITNESS TESTIMONY

### A.    Applicable Law

An ALJ "'must consider lay witness testimony concerning a claimant's ability to work.'" *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)). The ALJ cannot disregard such testimony without providing reasons that are "'germane to each witness.'" *Stout*, 454 F.3d at 1056 (citations omitted). "Inconsistency with medical evidence is one such reason." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). "Germane reasons for rejecting a lay witness' testimony [also] include inconsistencies between that testimony and the claimant's presentation to treating

PAGE 10 – OPINION AND ORDER

physicians or the claimant's activities, and the claimant's failure to participate in prescribed treatment." *Barber v. Astrue*, No. 1:10-cv-1432-AWI-SKO, 2012 WL 458076, at *21 (E.D. Cal. Feb. 10, 2012). Furthermore, "when an ALJ provides clear and convincing reasons for rejecting the credibility of a claimant's own subjective complaints, and the lay-witness testimony is similar to the claimant's complaints, it follows that the ALJ gives 'germane reasons for rejecting' the lay testimony." *Williams v. Astrue*, 493 F. App'x 866, 869 (9th Cir. 2012) (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009)).

### B.    Analysis

Plaintiff argues that the ALJ failed to provide germane reasons for discounting the lay witness testimony provided by Plaintiff's husband, John C. (*See* Pl.'s Opening Br. at 15.) As explained below, the Court disagrees.

The ALJ addressed John C.'s thirty-party function report on page twenty of his decision citing the lay witness testimony that states:

> she was unable to type, sit, or stand for extended time because of pain. She loaded the dishwasher while on a rolling chair and occasionally did laundry. She used a scooter when shopping. She had problems lifting, bending, reaching, walking, climbing stairs and using her hands. She could walk 30 yards before resting. She could lift under 10 pounds and stand 10 to 15 minutes. She used a cane, wheelchair and scooter.

(Tr. 20 (citing Tr. 251-58) (internal citations omitted).) The ALJ noted the observations provided are:

> not consistent with the findings of the consultative examiners or the treatment record. There is no evidence the claimant requires a wheelchair. While she uses a cane and scooter at times, they are not prescribed. Evidence supports some exertional and postural limitations, but the degree of limitations described are not consistent with the medical record. She exhibits full motor strength in the upper and lower extremities and normal gait.

(Tr. 20 (citing Tr. 387-95) (internal citations omitted).) As explained and demonstrated above, substantial evidence supports the ALJ's discounting of Plaintiff's subjective symptom testimony

PAGE 11 – OPINION AND ORDER

regarding her physical and mental impairments. Plaintiff has therefore failed to demonstrate that

the ALJ erred in discounting John C.'s testimony. However, even if the ALJ erred in discounting

John C.'s testimony, any error was harmless because John C.'s testimony was substantially

similar to Plaintiff's testimony, which the ALJ appropriately discounted. *See Blacksher v.*

*Berryhill*, 762 F. App'x 372, 377 (9th Cir. 2019) ("Ms. Blacksher's testimony was substantially

similar to that of her son. Because the ALJ provided clear and convincing reasons for

discounting Blacksher's statements, 'it follows that the ALJ also gave germane reasons for

rejecting' Ms. Blacksher's similar testimony, and so any error was harmless.").

## III.  MEDICAL OPINION EVIDENCE

### A.    Applicable Law

"There are three types of medical opinions in social security cases: those from treating

physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r, Soc.*

*Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th

Cir. 1995)). "Where a treating or examining physician's opinion is contradicted by another

doctor, the '[ALJ] must determine credibility and resolve the conflict.'" *Id.* (quoting *Thomas v.*

*Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002)). "An ALJ may only reject a treating physician's

contradicted opinions by providing 'specific and legitimate reasons that are supported by

substantial evidence.'" *Ghanim*, 763 F.3d at 1161 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528

F.3d 1194, 1198 (9th Cir. 2008)).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and

thorough summary of the facts and conflicting clinical evidence, stating his interpretation

thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d

715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "'The ALJ must do more

than state conclusions. He must set forth his own interpretations and explain why they, rather

PAGE 12 – OPINION AND ORDER

than the doctors', are correct.'" *Id.* (quoting *Reddick*, 157 F.3d at 725). "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

## B.    Analysis

Plaintiff argues that the ALJ failed to provide legally sufficient reasons for discounting the opinions of Plaintiff's examining psychologist, Dr. Gomes, and Plaintiff's treating physician, Dr. Hayes. (Pl.'s Opening Br. at 4.) The Court disagrees.

### 1.    Dr. Gomes

Dr. Gomes, an evaluating psychologist, opined that Plaintiff would not have difficulty performing simple and repetitive tasks or detailed and complex tasks. (Tr. 19.) He also opined that Plaintiff would not have difficulty accepting instructions from supervisors, interacting with coworkers or the public, or performing work activities on a consistent basis. (Tr. 19.) Additionally, the ALJ noted Dr. Gomes also opined that Plaintiff would not have difficulty maintaining workplace attendance and would have some difficulties completing a workday or workweek without interruption from psychiatric condition. (Tr. 19.) Dr. Gomes also noted Plaintiff would not have any difficulty dealing with usual stressors encountered in the workplace (Tr. 401-02.) Dr. Gomes diagnosed Plaintiff with a somatic symptom disorder. (Tr. 401.) The ALJ gives "some to significant weight" to the opinion of Dr. Gomes. (Tr. 19.)

The ALJ notes that no treating provider has diagnosed a somatic symptom disorder. (Tr. 19.) The Plaintiff argues the ALJ erred by discounting Dr. Gomes' opinion on this basis. (Pl.'s Opening Br. at 5-6.) Specifically, Plaintiff asserts the fact that Dr. Gomes was the only doctor to

PAGE 13 – OPINION AND ORDER

diagnose Plaintiff with a somatic symptom disorder is not a specific and legitimate reason to discount the opinion of Dr. Gomes. (Pl.'s Opening Br. at 5-6.) The Court disagrees.

The ALJ is merely pointing out a conflict between Dr. Gomes' opinion and the opinions of other medical sources. "Where a treating or examining physician's opinion is contradicted by another doctor, the '[ALJ] must determine credibility and resolve the conflict.'" *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002)). The ALJ first establishes the contradiction between the opinion of Dr. Gomes and other doctors and subsequently resolves the conflict. (*See* Tr. 19.) Specifically, the ALJ cites to Plaintiff's depressive mood being well-controlled with medications and that she has not required any mental health treatment other than medications prescribed by her physician. (Tr. 19 (citing Tr. 428, 497).) Thus, the ALJ provides specific and legitimate reasons for discounting the opinion of Dr. Gomes.

### 2.    Dr. Hayes

Dr. Hayes, a treating physician, reported in February 2019 that the Plaintiff had been diagnosed with chronic pain, arthritis in multiple joints, fibromyalgia, insomnia and restless leg syndrome and that she had chronic low back pain and lumbar spondylosis. (Tr. 19-20.) Dr. Hayes also opined that Plaintiff's arthritic pain affected her ability to perform physical activities and her chronic pain and restless legs affected her sleep and therefore her dependability in the work environment. (Tr. 20.) He also stated that Plaintiff's medical conditions contributed to chronic fatigue, which limited her stamina at work. (Tr. 20 (citing Tr. 500).) The ALJ does not make a statement concerning the weight given to the opinion of Dr. Hayes but notes that Dr. Hayes does not provide an opinion concerning the Plaintiff's "specific functional limitations,"

but the diagnoses provided by Dr. Hayes "have been taken into account in assessing her residual functional capacity." (Tr. 20.)

Plaintiff argues the ALJ failed to provide clear and convincing reasons to discount Dr. Hayes' uncontradicted opinion, and in the alternative, even if Dr. Hayes' opinion was contradicted, the ALJ failed to provide specific and legitimate reasons for discounting the opinion. (Pl.'s Opening Br. at 8-9.) The Court disagrees.

The ALJ does not reject the opinion of Dr. Hayes. Rather, the ALJ notes that the diagnoses contained in the opinion of Dr. Hayes are fully accounted for in Plaintiff's RFC. The ALJ does not assign a weight to the opinion of Dr. Hayes because Dr. Hayes has not provided "specific functional limitations" that can be incorporated into Plaintiff's RFC beyond what the ALJ already incorporated. Furthermore, the ALJ need not address vague statements that do not provide enough information to assess functional limitations. *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (holding ALJ reasonably determined opinion was vague because it failed to specify a claimant's functional limits and was thereby "inadequate for determining RFC"). Therefore, the ALJ did not err.

## IV.    PLAINTIFF'S RFC

The ALJ determined Plaintiff has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b). (Tr. 17.) Plaintiff argues the ALJ's RFC fails to include all limitations that were supported by the record. (Pl.'s Opening Br. at 17.) The Commissioner responds that the ALJ's RFC findings are supported by substantial evidence in the record. (Def.'s Br. at 14-15.)

### A.    Applicable Law

The RFC is the most a person can do, despite her physical or mental impairments. 20 C.F.R. § 404.1545. In formulating an RFC, the ALJ must consider all medically determinable

PAGE 15 – OPINION AND ORDER

impairments, including those that are not "severe," and evaluate "all of the relevant medical and

other evidence," including the claimant's testimony. *Id.*; SSR 96-8p, *available at* 1996 WL

374184. In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the

medical testimony and translating the claimant's impairments into concrete functional

limitations. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174-75 (9th Cir. 2008) (affirming

the ALJ's translation of moderate functional limitations into the claimant's RFC).

    "Only limitations supported by substantial evidence must be incorporated into the RFC

and, by extension, the dispositive hypothetical question posed to the VE." *Leroy M. v. Comm'r,*

*Soc. Sec. Admin.*, No. 6:18-cv-0632-HZ, 2019 WL 4276996, at *6 (D. Or. Sept. 10, 2019)

(quoting *Rhinehart v. Colvin*, No. 2:15-cv-01704-AC, 2016 WL 7235680, at *12 (D. Or. Dec.

12, 2016) and citing *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001)).

    **B.    Analysis**

    Plaintiff argues the ALJ "should have included more restrictive limitations to account for

Plaintiff's difficulty with: sitting for sustained periods; dependability and stamina;

understanding/remembering and concentration, persistence, and pace; and using her hands

repetitively." (Pl.'s Opening Br. at 17.) The Court disagrees.

    In formulating Plaintiff's RFC, the ALJ is responsible for translating her impairments

into concrete functional limitations by evaluating all relevant medical and other evidence and

resolving any conflicts in the record. Only limitations supported by substantial evidence must be

incorporated into the RFC. Here, with respect to a sitting limitation, the ALJ limited Plaintiff to

less than the full range of light work as defined in 20 CFR 404.1567(b). (Tr. 17.) The definition

of light work is provided in SSR 83-10 states "[s]ince frequent lifting or carrying requires being

on one's feet up to two-thirds of a workday, the full range of light work requires standing or

walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may

PAGE 16 – OPINION AND ORDER

occur intermittently during the remaining time." TITLES II & XVI: DETERMINING
CAPABILITY TO DO OTHER WORK-THE MED.-VOCATIONAL RULES OF APPENDIX
2, SSR 83-10, WL 31251, at *6 (S.S.A. 1983). Therefore, light work by definition includes a
sitting limitation. In limiting the Plaintiff to less than the full range of light work with up to four
hours of a combination of standing and walking, the ALJ has limited Plaintiff's sitting to the
remaining workday, which is fewer than six hours. This limitation comports with Plaintiff's
limitations that are supported by substantial evidence.

With respect to Plaintiff's argument that the RFC fails to incorporate dependability and
stamina limitations, the ALJ properly discounted these limitations provided by Dr. Hayes. To
reiterate, the opinion of Dr. Hayes failed to provide specific functional limitations and the
diagnostic portion of Dr. Hayes' opinion was fully incorporated into Plaintiff's RFC.

With respect to the lack of limitations accounting for impairment in
understanding/remembering and concentration, persistence, and pace, as well as, using her hands
repetitively, the ALJ assessed the severity of these alleged impairments and properly concluded
they were not as severe as alleged. Limitations from properly discounted evidence do not need to
be included in the residual functional capacity finding or the hypothetical question presented to
the vocational expert. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 691-92 (9th Cir.
2009). Additionally, it is generally understood that the residual functional capacity is "the
individual's maximum remaining ability to do sustained work activities in an ordinary work
setting on a regular and continuing basis, and the [residual functional capacity] assessment must
include a discussion of the individual's abilities on that basis." SSR 96-8p at *2; *see also* 20
C.F.R. §§ 404.1545(b), 416.945(b) (the residual functional capacity assessment considers a
claimant's RFC "for work activity on a regular and continuing basis").

PAGE 17 – OPINION AND ORDER

The ALJ weighed the evidence and translated into the RFC all of Plaintiff's limitations that were supported by substantial evidence and posed hypothetical questions to the VE consistent with that RFC. Accordingly, the Court concludes the ALJ did not err in formulating Plaintiff's RFC that accounted for all of Plaintiff's credible limitations, nor in posing hypothetical questions to the VE. *See Sam B. v. Comm'r of Soc. Sec.*, No. 2:19-CV-00354-DWC, 2019 WL 5541347, at *4 (W.D. Wash. Oct. 28, 2019) ("[T]he RFC assessment and the hypothetical questions posed to the VE were properly based on the credible functional limitations contained in the record, and thus both the RFC assessment and the hypothetical question posed to the VE were proper."); *Diane M. v. Comm'r of Soc. Sec.*, No. 3:17-cv-01971-BR, 2018 WL 6440889, at *8 (D. Or. Dec. 6, 2018) ("[T]he Court concludes the ALJ did not err when he assessed Plaintiff's RFC and he accounted for all credible limitations in his assessment."). Thus, the ALJ's RFC assessment is supported by substantial evidence.

## CONCLUSION

Based on the foregoing reasons, the Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence in the record.

**IT IS SO ORDERED.**

DATED this 21 day of December, 2021.

HON. MARK D. CLARKE
United States Magistrate Judge